```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN H. GALLE                  :     CIVIL ACTION
                                :
        v.                      :
                                :
DEPARTMENT OF GENERAL SERVICES, :
COMMONWEALTH OF PENNSYLVANIA,   :
et al.                          :     NO. 02-4622
```

<u>MEMORANDUM</u>

Bartle, J.                                         March   , 2003

   This is an action under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 42 U.S.C. § 1983.  Plaintiff Brian Galle ("Galle"), an employee of the Department of General Services, Commonwealth of Pennsylvania ("DGS"), maintains that he has been discriminated against and harassed and has faced retaliation on the basis of his disability, that is, epilepsy. He has brought claims under the Rehabilitation Act against DGS, Ernest Keen ("Keen"), an administrator of the Department of General Services, and Bill Wade ("Wade"), his immediate supervisor.  Galle also has asserted a claim under 42 U.S.C. § 1983 against defendant Keen, alleging that Keen violated his right to privacy by disclosing his disability to the Pennsylvania Department of Transportation ("PennDot").  Before the court is the motion of defendants DGS, Keen and Wade for summary judgment as to all of plaintiff's claims.

   We may grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled

to summary judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The non-movant must come forward with admissible evidence containing "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999); Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).  We review all evidence and make all reasonable inferences from the evidence in the light most favorable to the non-movant.  See Wicker v. Consol. Rail Corp., 142 F.3d 690, 696 (3d Cir. 1998).

## I.

Galle was hired in May, 2000 by DGS, an administrative department of the Commonwealth of Pennsylvania.  Pa. Stat. Ann. tit. 71, §§ 61, 631-649.  Among other duties, it has control and supervision over various state buildings including the Philadelphia State Office Building.  Id. at § 632.  Galle, who holds the position of "Clerk 1," is responsible for the mail room of the State Office Building on Spring Garden Street in Philadelphia.  Each day plaintiff rides to the post office with another DGS employee to pick up the mail.  After returning to the State Office Building, Galle then sorts the mail and provides it to individuals who pick it up for delivery to the various addressees.  He also has responsibility for outgoing mail, and about twice a month he delivers mail to the Governor's Philadelphia Office at Broad and Walnut Streets.

On November 30, 2000, Galle experienced an epileptic seizure while working at his desk. He was taken to Hahnemann Hospital where he received medical treatment. The Capitol Police, which are in charge of protecting state office buildings, prepared an incident report regarding Galle's seizure and forwarded that report to defendant Keen.

Safety concerns arose as a result of Galle's seizure at work. As a result, Chuck Hodge, Chief of the Labor Relations and Training Division of the Bureau of Human Resources of DGS, informed PennDot about Galle's epileptic seizure. Due to the report, PennDot temporarily suspended plaintiff's driver's license. Galle's driving privileges were restored effective August 1, 2001 after he provided medical documentation attesting to his ability to drive notwithstanding his condition. Defendant Keen had no contact with PennDot regarding Galle.

Plaintiff maintains that after his November 30, 2000 seizure his work environment changed dramatically. On one occasion soon after his seizure, a maintenance man at DGS asked Galle whether he was going to have another seizure. In addition, Galle contends that a computer was removed from his work station which was there for use in tracking and sending packages via United Parcel Service ("UPS"). While defendants concede that the computer in the mail room was removed, they assert, and Galle admits, that the computer was never used by Galle within the course and scope of his duties. Even though UPS had provided the track and ship software to DGS, it had never been hooked up to

the Internet for use. Throughout his employment at DGS, Galle has always prepared packages and their accompanying labels for UPS shipment by hand. Galle has conceded that the only time he used his computer at work was to play computer games and practice using the mouse and that the computer was removed "because I was playing solitaire and stuff on it."

On March 26, 2001, Galle had a predisciplinary conference with Keen. At that conference, he was reprimanded for falling asleep at work and smoking in the mail room. At his deposition, Galle admitted to having fallen asleep at work and to having smoked in the mail room. No formal disciplinary action was taken against Galle after this conference.

In May, 2001, Galle was given a "need[s] improvement" performance evaluation from defendant Keen. Soon thereafter, in July, 2001, his job description was changed to require that he possess a valid driver's license. About 500 Commonwealth employees had their job descriptions updated at about the same time. Plaintiff's new job requirement has never been enforced and another DGS employee continues to drive Galle to the post office each day. On August 9, 2001, his desk, chairs and heater were removed from his work space without explanation, but none of his personal property was disturbed. The furniture was replaced with other DGS-owned furniture. The heater was not replaced since the mail room was about to be moved across the hall to a warmer area. Soon thereafter plaintiff began working across the

hall in the new mail room, which was somewhat smaller than the previous location.

On December 21, 2001, Galle through his attorney made a written request that defendants take immediate steps to remedy the hostile work environment to which he was allegedly being subjected.  As a result of the letter, Keen conducted an investigation, although he did not interview Galle.  No actions were taken to address Galle's claim because, according to Keen, "[t]here was no discrimination so there was nothing to correct."  In March, 2002, for two days plaintiff was relieved of his normal job duties in order to assist in the preparation of new state employee identification cards.  Later that month, according to Galle, defendant Wade approached him in the mail room and commented, "I didn't wake you up, did I?"

At some point plaintiff had a job interview with the Department of Revenue, another administrative department of the Commonwealth, for the position of tax examiner.  He did not receive the position.  During a discussion with the interviewer, Craig Martin, Galle was informed that defendant Keen had called Martin about him.  According to Galle, Martin stated "apparently, you're not one of [Keen's] favorite people."

In June, 2002, defendant Keen formally reprimanded Galle for leaving work to attend his interview at the Department of Revenue without first obtaining leave to do so.  Galle admits that he failed to put in a leave slip.  Soon thereafter, in July, 2002, plaintiff initiated this lawsuit.

II.

Plaintiff has asserted claims of discrimination, harassment and retaliation under the Rehabilitation Act against DGS, Keen and Wade.  Section 504 of the Rehabilitation Act provides, in relevant part, that, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."  29 U.S.C. § 794(a).  The Rehabilitation Act defines "program or activity," in relevant part, as "a department, agency, ..., or other instrumentality of a State or local government; or the entity of such State or of a local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended ...."  Id. at § 794(b)(1).  By its terms, § 504 applies only to "program[s] or activit[ies]" receiving federal financial assistance and does not apply to individuals.  Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002); Fitzpatrick v. Pennsylvania, Dep't of Transp., 40 F. Supp. 2d 631, 637-38 (E.D. Pa. 1999).  Therefore, we must grant the motion for summary judgment of defendants Keen and Wade as to plaintiff's claims of discrimination, harassment and retaliation under the Rehabilitation Act.

The only Rehabilitation Act claims that remain are those asserted against DGS.  Defendant DGS maintains that

plaintiff's claims against it are deficient as a matter of law because DGS is not a "program or activity" which receives federal financial assistance. 29 U.S.C. § 794(a). We will assume for purposes of deciding defendants' motion for summary judgment that DGS fits this definition under the Rehabilitation Act.[1]

Section 504 of the Rehabilitation Act states, in relevant part, that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under ... the Americans with Disabilities Act of 1990." 29 U.S.C. § 794(d). In order to establish a prima facie case of disparate treatment under the Americans with Disabilities Act ("ADA") or the Rehabilitation Act, a plaintiff must show:

> (1) he [or she] is a disabled person within the meaning of the ADA; (2) he [or she] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he [or she] has suffered an otherwise adverse employment decision as a result of discrimination.

Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (quoting Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)). An adverse employment action is an action that "alters the employee's compensation, terms, conditions, or privileges of

---

1. DGS also has argued that plaintiff's Rehabilitation Act claims against it are barred by the Eleventh Amendment. The Third Circuit has recently held that the Eleventh Amendment is not a bar to § 504 claims such as plaintiff's which are brought against a state. Koslow v. Pennsylvania, 302 F.3d 161, 170-71 (3d Cir. 2002), cert. denied, No. 02-801, 2003 WL 650500 (Mar. 3, 2003).

employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (citations omitted).

DGS concedes that plaintiff is qualified to perform his position as Clerk 1.  However, DGS argues that Galle's epilepsy does not meet the criteria of a disability under the Rehabilitation Act.  To qualify as disabled under the ADA and the Rehabilitation Act, a plaintiff must show that: (1) he or she has a physical or mental impairment; (2) such an impairment limits a major life activity; and (3) the limitation on the major life activity is substantial.  Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 194-95 (2002) (citations omitted). Defendants concede that epilepsy is an impairment, but they maintain that Galle's epilepsy does not substantially limit a major life activity.  There is conflicting authority as to whether epilepsy qualifies as a disability under the ADA and the Rehabilitation Act.  See, e.g., EEOC v. Sara Lee Corp., 237 F.3d 349, 352-53 (4th Cir. 2001); Otting v. J.C. Penney Co., 223 F.3d 704, 708-11 (8th Cir. 2000); Lane v. Harborside Healthcare-Westwood Rehab. & Nursing Ctr., No. Civ. 01-050-JD, 2002 WL 1674184, at *5-*7 (D.N.H. July 16, 2002); Rowles v. Automated Prod. Sys., Inc., 92 F. Supp. 2d 424, 427-29 (M.D. Pa. 2000); Popko v. Pennsylvania State Univ., 84 F. Supp. 2d 589, 593-94 (M.D. Pa. 2000), aff'd, 254 F.3d 1078 (3d Cir. 2001).

Even assuming that Galle's epilepsy is a disability under the Rehabilitation Act, plaintiff has failed to come forth with any evidence showing that he has suffered an "adverse employment decision as a result of discrimination." Shaner, 204 F.3d at 500 (citations omitted).  In his brief opposing summary judgment, plaintiff cites only to the reporting of his epilepsy to PennDot, the relocation of the mail room, the removal of his computer, his reassignment for two days to make identification cards and "disability-related comments," by his supervisors.  As to the latter, he fails to identify those comments more specifically and how they qualify as discrimination.

The reporting of plaintiff's condition to PennDot cannot qualify as an adverse employment action because it in no way affected Galle's terms, conditions or privileges of employment.  Nor did it deny him employment opportunities or affect his "status as an employee." Robinson, 120 F.3d at 1300. It is undisputed that even though his job description was changed to require Galle to hold a driver's license, plaintiff has never been required to drive in order to satisfy his duties as Clerk 1 for DGS.  In addition, none of the other actions to which plaintiff points, taken together, can possibly qualify as an adverse employment action.  The relocation of the mail room to a slightly smaller space does not constitute discrimination on the basis of disability.  Additionally, plaintiff concedes that he never used his computer for work-related purposes.  Therefore, its removal, which prevented plaintiff from playing computer

games, was not an adverse employment action.  Finally, Galle's two-day reassignment to make employee identification cards was in no way adverse.  Galle concedes that his job description requires him from time to time to work on tasks other than the mail.  In addition, several other employees who do not suffer from epilepsy were also temporarily reassigned to prepare employee identification cards.

While referred to in his complaint, Galle does not argue disability discrimination as to the formal reprimand he received for admittedly failing to file a leave slip prior to attending his interview for a Tax Examiner position with the Department of Revenue.

Accordingly, we will grant the motion of defendant DGS for summary judgment as to plaintiff's claim of disability discrimination under § 504 of the Rehabilitation Act.

### III.

The Third Circuit has assumed without deciding that there is a cause of action for harassment under the ADA.  <u>Walton v. Mental Health Ass'n of Southeastern Pa.</u>, 168 F.3d 661, 666-67 (3d Cir. 1999).  If such a claim can properly be brought under the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he or she is a qualified individual with a disability under the ADA or the Rehabilitation Act; (2) that he or she was subject to unwelcome harassment; (3) the harassment was based on his or her disability or request for an accommodation; (4) the harassment was sufficiently severe or pervasive so as to alter

the conditions of his or her employment and to create an abusive working environment; and (5) that his or her employer knew or should have known of the harassment and failed to take prompt effective remedial action.  Id. at 667.

To determine whether harassment is sufficiently severe or pervasive so as to alter the conditions of employment, a court must consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

We will assume for purposes of defendants' motion that plaintiff is a qualified individual with a disability.  Plaintiff contends that he has been subjected to a hostile work environment due to his epilepsy.  He cites to the same incidents as discussed above with respect to his discrimination claim.

For the reasons stated above, plaintiff has not come forward with evidence to create a material issue of fact as to his harassment claim.  Merely asserting in a conclusory fashion that he has been subject to harassing comments from his supervisors because of his disability is not enough.  At the summary judgment stage plaintiff has the burden to come forward with evidence in the record to establish his claim.  Galle has failed to do so.  Furthermore, the instances cited by him, taken together, do not qualify as harassment which is sufficiently

severe or pervasive so as to alter the working environment.  Id. (citation omitted); see also McCutchen v. Sunoco, Inc., No. CIV.A. 01-2788, 2002 WL 1896586, at *12-*13 (E.D. Pa. Aug. 16, 2002).  We will therefore grant the motion for summary judgment of defendant DGS as to plaintiff's disability harassment claim under the Rehabilitation Act.

IV.

To establish a prima facie case of retaliation under the ADA and the Rehabilitation Act, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Shaner, 204 F.3d at 500 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)); see also Roberts v. Pa. Dep't of Pub. Welfare, 199 F. Supp. 2d 249, 252 (E.D. Pa. 2002). "[T]emporal proximity between the protected activity and the [adverse employment action] is [itself] sufficient to establish a causal link."  Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997)).  However, "temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'"  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (citations omitted).

-12-

Galle maintains that he engaged in protected activity on December 21, 2001, when he, through his attorney, sent a letter to defendant Keen urging that defendants take immediate steps to remedy the hostile work environment from which he was suffering. Certainly the letter qualifies as protected activity.

Plaintiff contends that subsequent to the sending of this letter, in March, 2002, he was subjected to adverse employment actions, including being detailed to prepare state employee identification cards and a harassing comment by defendant Wade. Galle relies on the statement of Wade who visited him in the mail room and remarked, "I didn't wake you up, did I?" However, there is no evidence in the record that Wade was aware of the December 21, 2001 letter to Keen. Furthermore, plaintiff has failed to show how the comment by Wade qualifies as an adverse employment action.

Galle's other assertion also fails. He prepared employee identification cards for only two days. As stated above, Galle admits that his job description requires him occasionally to work on tasks other than the mail. Furthermore, several other employees who do not suffer from a disability were also temporarily reassigned to prepare employee identification cards. Plaintiff has not established that such temporary reassignment was in any way adverse.

Even if the reassignment and the comment from Wade could be considered adverse, plaintiff has come forth with no evidence of a causal connection between the December 21, 2001

-13-

letter and those actions.  The temporal proximity of three months between the letter and the reassignment as well as the comment from Wade is not "unusually suggestive."  Farrell, 206 F.3d at 280 (citation omitted).

We will therefore grant the motion of defendant DGS for summary judgment as to plaintiff's claim of disability retaliation under the Rehabilitation Act.

V.

Plaintiff also has brought a claim against defendant Keen under 42 U.S.C. § 1983, which reads in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The statute itself does not create any substantive rights.  It simply provides a remedy for vindicating rights established under the Constitution or laws of the United States.  Albright v. Oliver, 510 U.S. 266, 271 (1994); Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).

In his complaint, plaintiff maintains that defendant Keen violated his right to privacy, as protected by the Ninth and Fourteenth Amendments to the United States Constitution, when he allegedly disclosed plaintiff's disability to PennDot.  Galle does not assert a § 1983 claim against DGS or defendant Wade.  We

-14-

will assume for purposes of deciding defendant Keen's motion for summary judgment that plaintiff's constitutional rights were violated by the disclosure of Galle's disability to PennDot.

As stated above, the undisputed evidence in the case shows that Chuck Hodge of DGS contacted PennDot and informed it of Galle's disability. Plaintiff has come forth with no evidence that defendant Keen reported Galle's epileptic seizure to PennDot. In order for an individual to be liable under § 1983, he or she must personally perform, direct or knowingly permit an illegal act. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Since plaintiff has failed to create a material issue of fact as to whether Keen was personally involved in the reporting of his condition to PennDot, we will grant the motion of Ernest Keen for summary judgment with respect to plaintiff's claim under § 1983.

```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIAN H. GALLE                  :     CIVIL ACTION
                                :
        v.                      :
                                :
DEPARTMENT OF GENERAL SERVICES, :
COMMONWEALTH OF PENNSYLVANIA,   :
et al.                          :     NO. 02-4622
```

<u>ORDER</u>

AND NOW, this      day of March, 2003, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of defendants Department of General Services, Commonwealth of Pennsylvania, Ernest Keen and Bill Wade for summary judgment is GRANTED; and

(2)  judgment is entered in favor of defendants Department of General Services, Commonwealth of Pennsylvania, Ernest Keen and Bill Wade and against plaintiff Brian H. Galle.

BY THE COURT:

_____
                           J.